# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CHRIS MOON,

     Petitioner,

v.                            CASE NO. 8:16-cv-387-T-02SPF

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## <u>ORDER DENYING PETITION</u>

Before the Court is Petitioner Chris Moon's *pro se* petition for habeas

corpus filed pursuant to 28 U.S.C. § 2254.  Mr. Moon is a Florida prisoner serving

40 years followed by life probation for his 2008 state conviction of lewd or

lascivious molestation of a child under 12.  After careful consideration of the

petition (Dkt. 1), the response and supplemental response (Dkts. 6, 14), and the

state court records (Dkt. 8),[1] the Court denies the petition.

---

[1] The state courts' records are found in an appendix in paper format.  The appendix contains 32 separate exhibits.  The state court record on appeal is found at Exhibit 1.  The pretrial, trial, and sentencing transcripts will be referenced as "Exh. 1, Tr. at ___."  Other documents in the record on appeal will appear as "Exh. 1, R. at ___."  Record citations to the remaining exhibits will be denoted using the exhibit number and, if necessary, the page number, such as "Exh. 2 at ___."

**Factual Background**

In January and February 2007, eleven-year-old C.H. would sometimes spend the weekends with her mother.  Her mother, Julie Deriso, was dating and living with Petitioner at the time.  One weekend, Petitioner came into the bedroom where C.H. and a girlfriend were sleeping and touched C.H.'s genital area for an extended time in a lewd or lascivious manner.  The incident was not reported immediately as C.H. told only her friend C.P.M. who was sworn to secrecy.

Both the victim C.H. and her ten-year-old friend C.P.M. testified at trial. Exh. 1, Tr. at 188–209, 214–22.  The girls' testimony was consistent.  They were both sleeping on the same air mattress when Petitioner molested C.H., but C.P.M. was not awakened.  *Id.* at 196–97, 218.  C.H. told C.P.M. the following morning that Petitioner put his legs between or over C.H.'s legs, stuck his hand down her underwear, and touched her private area with his hand for about 45 minutes.[2]  *Id.* at 196–201, 219.  C.P.M.'s testimony was allowed as child hearsay statements.

Petitioner's biological daughter, Ms. Fawn Moon, testified about similar collateral crime, or *Williams*[3] rule, evidence.  Exh. 1, Tr. at 282–85.  Ms. Moon

---

[2] Upon questioning, she did name the "private area" as her vagina.  Exh. 1, Tr. at 197–98.

[3] *Williams v. State*, 110 So. 2d 654 (Fla. 1959) (holding similar fact evidence of commission of a collateral crime is inadmissible to prove bad character or criminal propensity but relevant similar fact evidence will not be excluded merely because it relates to the commission of a separate crime).  *Williams* was codified in section 90.404(2)(a), Florida Statutes, which provides that "[s]imilar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent,

was 22 years old at the time of trial.  She testified to a single act of child molestation by touching in 1996 committed by Petitioner when she was around nine years old.  The trial court did not permit Petitioner's counsel to cross examine Ms. Moon about the outcome of the alleged reported acts of Petitioner in 1996 or to present other evidence as to why the state elected in 1996 not to file charges against Petitioner.[4]

Two law enforcement officers testified: Deputy Robert Howard and Detective Lee Raschke.  Exh. 1, Tr. at 181–88, 223–48.  Deputy Howard of the sheriff's highway patrol responded to the 911 call of child abuse on February 17, 2007.  He interviewed Ms. Deriso and C.H.  Medical personnel were not contacted because C.H. reported the incident to Ms. Deriso about one month after it happened.

Lee Raschke, a detective with the sheriff's office, testified that he interviewed C.H. at school, never located C.P.M. to interview her, and interviewed Petitioner on April 3, 2007.  Exh. 1, Tr. at 226–28, 235, 237.  Petitioner told Detective Raschke that he did not think he committed the act, but if he did it, he did not remember doing it.  *Id*. at 232–33, 241–43.  Petitioner explained that he

---

preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant to solely to prove bad character or propensity."

[4] There was a "no file" letter written by the state attorney's office and perhaps another witness who could testify to the fact that charges were not brought.  Neither the letter nor the witness could reveal the underlying reasons for not filing charges.

checked on the girls to make sure their covers were on, and he may have touched C.H.'s vagina with his hand but if he did, it was not intentional or for sexual purposes.  *Id.* at 232–33, 242.

Neither Ms. Deriso nor Petitioner took the stand.  Evidence showed that Julie Deriso and Petitioner broke up on Valentine's Day, a few days before the molestation was reported.  Exh. 1, Tr. at 177, 243.  Petitioner's theory of defense at trial was that Ms. Deriso called in the child abuse complaint as retaliation for Petitioner breaking up with her and returning to a former girlfriend.  *Id.* at Tr. 175–77.

## Procedural History

A jury found Petitioner guilty of lewd and lascivious molestation of C.H., a child under 12.  On direct appeal he raised three issues, arguing error in the admission of C.H.'s out-of-court child hearsay statements to C.P.M., the admission of Ms. Moon's *Williams* rule evidence, and improper prosecutorial comments in closing argument.  Exh. 2.  The judgment and sentence were per curiam affirmed without opinion on direct appeal.  Exh. 5; *Moon v. State*, 22 So. 3d 551 (Fla. 2d DCA 2009).

Petitioner, through counsel, then filed in the state circuit court a motion and amended motions for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Exhs. 7, 9, 11.  All three grounds claimed ineffective assistance

of trial counsel.  Petitioner alleged defense counsel failed to adequately object to both the admission of child hearsay statements and to improper prosecutorial statements in closing.  He also claimed defense counsel failed to elicit the inconsistent dates of the incident given by C.H. and Deputy Howard.  All claims were summarily denied on the merits.  Exh. 13.  The denial was per curiam affirmed without opinion on appeal.  Exhs. 13, 15; *Moon v. State*, 125 So. 3d 158 (Fla. 2d DCA 2013).  Petitioner then filed a petition for writ of habeas corpus in the state appellate court alleging ineffective assistance of trial, not appellate, counsel, which was denied.  Exhs. 17, 18; *Moon v. State*, 162 So. 3d 1004 (Fla. 2d DCA 2014).

Thereafter, in 2014, Petitioner filed a second rule 3.850 motion which was denied as untimely and procedurally barred.  Exh. 20.  The denial was per curiam affirmed without opinion on appeal.  Exh. 22; *Moon v. State*, 200 So. 3d 1277 (Fla. 2d DCA 2015).  In early 2015, Petitioner filed a rule 3.800(a) motion to correct illegal sentence, which was granted, and on December 8, 2015, Petitioner's sentence was amended to reflect 40 years in prison followed by life probation. Exhs. 24, 30, 31.  This timely petition followed.

Petitioner's first ground challenges the admission of *Williams* rule and child hearsay evidence.  Grounds two through four claim ineffective assistance of trial counsel.  Respondent argues part of ground one and all of grounds two, three, and

four are barred from this Court's review.  Petitioner concedes grounds two through

four are procedurally defaulted but argues the defaults should be excused for cause

and prejudice.

### Exhaustion and Procedural Default

The writ of habeas corpus cannot be granted unless the petitioner has

exhausted all available state court remedies.  *Coleman v. Thompson*, 501 U.S. 722,

731 (1991); *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012)

(citing 28 U.S.C. § 2254(b),(c)).[5]  Exhausting state remedies requires a petitioner

to "fairly present" his claim in each appropriate state court "thereby alerting that

court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

(citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) and *Duncan v. Henry*,

513 U.S. 364, 365 (1995) (per curiam)).  The petitioner first must have "fairly

presented" both the facts and substance of the constitutional federal habeas claim

to the state court.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citing *Picard v.

Connor*, 404 U.S. 270, 275 (1971)).  A state prisoner properly raises a federal

constitutional claim by citing the federal source of law, or a case deciding the

claim on federal grounds.  *Howell v. Mississippi*, 543 U.S. 440, 443–44 & n.2

---

[5] *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.").

(2005).  The state prisoner must have presented the same claim to the state courts as the one being raised in the federal habeas petition.  *Picard*, 404 U.S. at 276.

Federal habeas review may be precluded in certain circumstances.  If the claim was raised in state court but the state court found the claim was defaulted on state procedural grounds, the claim is procedurally barred from habeas review. *Coleman*, 501 U.S. at 729–30.  Under the procedural default doctrine, a claim is barred if the claim was not raised in state court and "the court to which the petitioner would be required to present [the] claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Id.* at 735 n.1.  To avoid a procedural bar, a petitioner must show "either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default."  *Lucas*, 682 F.3d at 1353; *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

Petitioner does not claim either of these exceptions to excuse the default with respect to the first ground.  Concerning his three claims for ineffective assistance of trial counsel, however, he asserts they fall within the narrow category of cases with a relaxed cause-and-prejudice standard in initial-review collateral proceedings.  *See Martinez v. Ryan*, 566 U.S. 1 (2012).

## Discussion

## <u>Ground One</u>

Petitioner alleges 1) the trial court's rulings allowing collateral crime evidence and child hearsay were contrary to clearly established federal law, and 2) his Fifth and Sixth Amendment rights to a fair trial were violated when defense counsel was not allowed to present evidence that the state failed to prosecute him in 1996 for alleged sexual abuse committed on Ms. Fawn Moon when she was nine years old.  Dkt. 1 at 6–9.  On direct appeal, appellate counsel raised these issues, but not in terms of violations of any constitutional rights.  These constitutional violations were not raised in his postconviction filings.

> *Sub-claim – Collateral Crime/Child Hearsay contrary to Clearly Established Law*

The trial court permitted the collateral crime witness, Ms. Moon, to testify after a hearing held on the state's intent to rely on such evidence and defense counsel's motion in limine.  Exh. 1, R. at 19–23, 45–53, 67–74, Tr. at 16–39.  After a hearing held on a separate motion in limine, the trial court allowed C.P.M. to testify about out-of-court statements made to her by the child victim C.H. describing the sexual abuse in 2007.  Exh. 1, R. at 54–55, 60–66, Tr. at 5–16.

"[F]ederal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  A state court's interpretation of state law or rules "provides no basis for

federal habeas corpus relief, since no question of a constitutional nature is involved." *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983). A federal habeas court is "severely restricted" in the review of state evidentiary rulings, and the evidentiary violation must constitute denial of a "fundamental fairness." *See Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir. 1983) (citations omitted).

Error in the admission of both collateral crime evidence through Ms. Moon and child hearsay through C.P.M. was argued on direct appeal and the trial court was affirmed. Exhs. 2–5. This Court is bound by the state court's ruling on state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Federal courts should not "second-guess" state courts as the "final arbiters of state law." *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005).

Even if the *Williams* rule claim were cognizable on habeas review, any constitutional claim was not exhausted and is now procedurally defaulted. In any event, Petitioner has failed to demonstrate he was deprived of a fundamental fairness in his trial by the admission of Ms. Moon's *Williams* rule evidence.

Ms. Moon testified about a single act of molestation similar to the act committed on C.H. when Ms. Moon was almost the same age. Exh. 1, Tr. at 283–84. But Ms. Moon's case also involved later, more extensive sex abuse. Distinguishing between the single, initial act of molestation and the many later acts

of alleged sexual battery, or rape, committed by Petitioner on Ms. Moon, the trial court limited the testimony to Ms. Moon's single claim of initial molestation.  *Id*. at 249–54; *see* Fla Stat. § 90.404(2)(b) (2008).  The trial court reasoned that any charges which could have been brought in 1996 pertained to the broader allegations of sexual battery alleged by Ms. Moon rather than the initial single act of molestation which occurred prior to the broader acts of sexual battery on Ms. Moon.  *Id*.  Ms. Moon's brief testimony was not a feature of the trial.  The one act she testified about was very similar to the act testified about by C.H.  Ms. Moon was nine and C.H. was ten.  The admission was relevant to show the absence of mistake or accident on the part of Petitioner and his modus operandi of going into little girls' bedrooms during night to assure they were tucked in under the covers. The trial court properly applied Florida law, as was affirmed on direct appeal.

Likewise, the evidentiary ruling admitting C.P.M.'s child hearsay testimony is not cognizable on habeas review, and any constitutional claim was never exhausted and is now procedurally defaulted.  Petitioner, again, has not shown fundamental unfairness to deprive him of due process and a fair trial.  C.P.M. testified about what C.H., the victim of the 2007 offense for which Petitioner was convicted, told her the morning after the incident.  C.P.M. testified C.H. gave her details of the act and urged her not to tell anyone.  Exh. 1, Tr. at 219–20.  Applying section 90.803(23), Florida Statutes (2008), and after a full hearing on the state's

notice of intent to admit child hearsay statements and Petitioner's motion in limine, the trial court found C.H.'s statements to C.P.M. admissible as out-of-court statements made by a child victim under 16. The trial judge found no lack of trustworthiness, and both girls testified consistently. This evidentiary ruling was raised on direct appeal and affirmed.

Neither evidentiary ruling has been shown to be contrary to clearly established federal law or fundamentally unfair, and neither provides a basis for habeas relief.

*Sub-claim – Fifth and Sixth Amendment rights to fair trial*

Petitioner claims he was denied a fair trial because the trial court did not allow his trial counsel to present evidence that the state elected not to prosecute him for the 1996 incident with Ms. Fawn Moon. He notes that defense counsel was not allowed to cross-examine Ms. Moon about whether charges were ever brought, and Ms. Moon's testimony was highly prejudicial based on his defense "that [C.H.'s] allegation was fabricated at the behest of her mother with whom Petitioner had broken off a relationship." Dkt. 1 at 9. Nor, he claims, was defense counsel allowed to argue to the jury that the state elected not to file charges for the similar acts alleged by Ms. Moon. Dkt. 1 at 5.

In the defense's opening statement, the state objected to the following:

Now you are going to hear the state call a witness Fawn Moon. Fawn Moon is Chris Moon's daughter, and what you will hear is Ms. Deriso

11

was aware that back in the mid '90s, '96, when Chris Moon broke up with his wife, there was allegation that Chris had fondled Fawn Moon. And you might be thinking one plus one equals two, but really, you're going to see that what happened was Ms. Deriso was counting on this prior allegation of abuse to be the wind behind her sail to get her revenge on Mr. Moon.

The problem with that was the prior allegation with Mr. Moon's daughter, Fawn Moon, was thoroughly investigated back in '96 by both Hillsborough County and the state attorney's office, and they did not even file charges. It was unfounded.

Exh. 1, Tr. at 176. After a side bar, the court stated, "We're not going to talk about

that. I'm going to sustain the objection." *Id.*

Another side bar was held after the testimony of C.H.:

THE COURT: Why did you want to approach the bench when [defense counsel Brancato] talked about the clearing of that case?

PROSECUTOR DURAN: Because it's, number one, the only way it's going to come into evidence is through Fawn Moon, and the only reason she knows about that is because it's hearsay. She has no other knowledge because that was based on a decision made by the state attorney's office.

THE COURT: That's one way to look at it, but really it's not fair that we talk about that because we know there's all kinds of reasons that cases aren't filed, and we have to be fair to the defense. So I'm going to rule that that can't be talked about anymore.

DEFENSE COUNSEL DOHERTY: Talk about what?

THE COURT: That the state declined to prosecute in the Fawn Moon case.

DEFENSE COUNSEL DOHERTY: We can't talk about that at all?

THE COURT: No.

12

DEFENSE COUNSEL DOHERTY: For the record we can't make that argument in closing arguments?

THE COURT: No. How would you ever get it in?

DEFENSE COUNSEL DOHERTY: I'm going to object to it. The fact of the matter is that she knows. Fawn Moon knows this was never followed up on, and her dad never went to jail or anything like that.

THE COURT: Is that okay?

DEFENSE COUNSEL DOHERTY: Metzger knows that.

PROSECUTOR DURAN: There was a letter of release filed. She would know that based on hearsay, based on what other people – she knows the case wasn't followed up on, but she doesn't know why.

THE COURT: You can ask her if you know if the case was followed up on. Can you do that with Metzger?

DEFENSE COUNSEL BRANCATO: He knows nothing ever happened with that case.

PROSECUTOR HINDMAN: But just for the record, as long as the defendant doesn't get on the witness stand. There are a lot of reasons we don't file cases. To suggest that the case doesn't have merit is unfair.

PROSECUTOR DURAN: They can attack their credibility, but as to why the state didn't file it –

DEFENSE COUNSEL DOHERTY: I have a standing objection to the *Williams* rule coming in. So I have a different point, but if that's –

THE COURT: You can ask Ms. Moon, but don't ask Metzger. Ms. Moon would know that the case in which she was a witness/victim never materialized, never even came about.

Exh. 1, Tr. at 210–12.

On the last morning of trial before the jury was brought in, the court permitted a proffer and heard more argument concerning the defense counsel's desire to introduce evidence that the state did not file charges for the 1996 incident involving Ms. Moon.  Exh. 1, Tr. at 265–81.  The trial court ruled there would be no cross-examination about the "no file" in 1996 and defense counsel could not bring up the "no file" in closing.  *Id*. at 281.

Ms. Moon's testimony before the jury consisted of less than two pages of transcript.  Exh. 1, Tr. at 283–84.  She testified that Petitioner "molested me when I was nine years old."  *Id*. at 284.  She described the single incident as follows: "[Petitioner] went in my room, took down my pants, laying on the bed, took down my pants and started to touch my privates . . . . My vagina."  *Id*.

First, Respondent's assertion that this claim is procedurally barred is well-taken.  Petitioner did not raise a violation of federal due process in the state courts on direct appeal or by way of habeas for ineffective assistance of appellate counsel. His appellate counsel cited exclusively state case law, and nothing in the state court record put the appellate court on notice that Petitioner was raising such a claim.  Exh. 2 at 41–43; *see Baldwin*, 541 U.S. at 32; *Preston v. Sec'y, Fla. Dep't of Corr*., 785 F.3d 449, 460 (11th Cir. 2015) ("raising an analogous state claim" does not mean federal claim is exhausted); *Pearson v. Sec'y, Dep't of Corr*., 273 F.

App'x 847, 849–50 (11th Cir. 2008) (alerting state court "that the ruling under review violated a federal constitutional right" is required by exhaustion doctrine).

Because Florida law does not provide for successive direct appeals and requires ineffective assistance of appellate counsel be raised by habeas petition in the state court of appeal within two years after a conviction is final, *see* Fla. R. App. P. 9.141(d)(5), the federal claim is now procedurally defaulted. *See Smith*, 256 F. 3d at 1138 (holding failure to exhaust state remedies that are no longer available is a procedural default that bars federal habeas relief). There are no longer available state remedies to exhaust.

Second, another factor prohibiting federal habeas review is that the scope of cross-examination and the admissibility of evidence relating to whether a crime was charged for a collateral crime are errors of state law. *See Lewis*, 497 U.S. at 780. State law interpretations of Florida evidentiary law provide no basis for federal habeas relief because there is no constitutional question. *Carrizales*, 699 F.2d at 1055. This Court is bound by state court rulings not involving matters of U.S. constitutional law. *Herring,* 397 F.3d at 1354–55 (citation omitted).

If one did look to the merits of this issue, admitting evidence of the 1996 similar incident involving Ms. Fawn Moon was in keeping with Florida law. In *Holland v. State*, 466 So. 2d 207 (Fla. 1985), the Florida Supreme Court held that a collateral offense that was nolle prossed was admissible and the defendant's

15

request to inform the jury the collateral crime charge had been dropped was properly denied.  A decision not to file charges is not the equivalent of an acquittal on charges never brought.  *See id*. at 209.

Here, there was no evidence that the "no file" decision in 1996 was based on guilt or innocence.  The proffer of Ms. Moon before she took the stand revealed that she did not know what happened relative to any charges in 1996.  Exh. 1, Tr. at 256, 260.  The proffer of Detective Raschke showed he did not know why the state did not bring charges.  *Id*. at 271–73.  A proffered letter from the state attorney's office did not articulate or set forth the reason for the decision not to file charges.  Exh. 1, R. 82 ("State has elected not to file criminal charges at this time").

Petitioner cannot claim he was denied due process concerning Ms. Moon's testimony.  The trial court's exclusion of any evidence showing the state did not prosecute Petitioner for the collateral incident provides no basis for federal habeas relief.

## Procedurally Defaulted Claims
## of Ineffective Assistance of Trial Counsel

*Martinez* carved out a very narrow exception to the rule of procedurally defaulted claims for § 2254 habeas petitioners:

> Where, under state law, claims of ineffective assistance of trial counsel
> must be raised in an initial-review collateral proceeding, a procedural
> default will not bar a federal habeas court from hearing a substantial

16

> claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17.  In Florida, claims of ineffective assistance of counsel are not cognizable on direct appeal except under rare circumstances.  *Gore v. State*, 784 So. 2d 418, 437–38 (Fla. 2001).  Those circumstances do not exist here.

Although Petitioner's first rule 3.850 motion was submitted through counsel, the *Martinez* exception applies if his post-conviction counsel was ineffective in filing the 3.850 motion.  If Petitioner, either *pro se* or through counsel, should have raised but did not raise ineffective assistance of trial counsel in the initial-review collateral proceeding, then the default is excusable under certain circumstances. To establish excuse and justification for habeas review, the claim must be "a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  *Martinez*, 566 U.S. at 14.

A claim for ineffective assistance of counsel has merit if the petitioner shows both 1) counsel's deficient performance and 2) prejudice resulting from the deficient performance.  *Strickland v. Washington*. 466 U.S. 668, 687–88 (1984). Deficient performance means "that no competent counsel would have taken the same action."  *Preston v. Sec'y, Dep't of Corr.*, 745 F. App'x 835, 837 (11th Cir. 2018) (citing *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011)). *Strickland* prejudice requires the petitioner show the reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. (citing *Strickland*, 466 U.S. at 694). The reviewing court must consider the merits of the underlying claims to determine prejudice. *Sneathen v. Sec'y, Dep't of Corr.*, 787 F. App'x 567, 572 (11th Cir. 2019) (per curiam) (citing *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990)). This Court must determine whether Petitioner's claims are substantial under *Martinez*, which necessarily includes a *Strickland* analysis.

## **Ground Two**

Petitioner claims his trial counsel was ineffective by failing to call Julie Deriso, his former girlfriend and mother of C.H, as a witness. He admits that the claim is procedurally defaulted because he did not raise it until his successive, late-filed rule 3.850 motion. Dkt. 1 at 14. He urges consideration on habeas review under *Martinez*. *Id*.

Addressing the underlying claim confirms Petitioner is not entitled to habeas relief. He asserts that trial counsel could have elicited from Ms. Deriso inconsistencies about the date of the offense, the length of time he molested C.H., and Ms. Deriso's bias against him. The precise date of the molestation was never established through the witnesses, although it was apparent it occurred sometime before Valentine's Day and after mid-January. The duration of the molestation was established at 45 minutes, and if Ms. Deriso would testify to 20 minutes, it

would not negate the fact it happened.  With respect to Ms. Deriso's feelings toward Petitioner, the defense aptly argued in both opening and closing that Ms. Deriso wanted retaliation against Petitioner for breaking up with her.  Exh. 1, Tr. at 175–76, 301–02.  Ms. Deriso's motive to fabricate was also brought out during cross-examination of C.H. and Detective Raschke.  Exh. 1, Tr. at 202–03, 209–09, 243.  Defense counsel's performance cannot be said to be deficient.

Petitioner has also failed to show *Strickland* prejudice—that the outcome would have been different.  The addition of Ms. Deriso's testimony does not create a reasonable probability of an acquittal.  The strong testimony of C.H. as corroborated by C.P.M., and Ms. Moon's testimony of Petitioner's modus operandi and absence of mistake or accident support the jury's conviction.  Petitioner has failed to show this ground is substantial or has merit sufficient to justify excusal of the procedural default.

## Ground Three

Petitioner alleges trial counsel misadvised him not to testify.  He admits this claim is procedurally defaulted because it was not raised in his first rule 3.850 motion.  To avoid the default, he must satisfy the *Martinez* requirement of showing the claim is substantial and has merit.

By not testifying, he asserts he was prevented from conveying his innocence and Ms. Deriso's motive to fabricate.  The trial court questioned him about his

decision not to testify, and he stated it was his decision and he was comfortable making it.  Exh. 1, Tr. at 286–87.  These statements are inconsistent with his position he relied on his counsel's advice rather than his own volition.

In any event, evidence of his innocence and Ms. Deriso's motive to fabricate were squarely presented to the jury.  Detective Raschke testified Petitioner denied molesting C.H. and may have accidentally touched her genital area when pulling up the covers over her.  Exh. 1, Tr. at 232–33, 240–45.  Through cross-examination of C.H. and Detective Raschke, defense counsel elicited Ms. Deriso's motives and the relationship between her and Petitioner.  *Id*. at 202–03, 208–09, 243.  Defense counsel's performance was not deficient.

As noted above, *Strickland* prejudice does not exist.  The jury heard sufficient evidence regarding his innocence and Ms. Deriso's motive to lie.  The outcome of the trial would not have been different had he testified.  This claim is not a substantial one sufficient to warrant habeas relief.

## **<u>Ground Four</u>**

Petitioner claims trial counsel misadvised him about a favorable pretrial plea offer.  As in grounds two and three, he seeks consideration of this claim under *Martinez*.

Petitioner alleges that defense counsel told him erroneously the state would not be permitted to use *Williams* rule evidence at trial.  Had he informed otherwise,

Petitioner states he would have accepted the five to ten-year prison term offered. Two days before trial, Petitioner attended the hearing on the *Williams* rule evidence.  Exh. 1, Tr. at 1, 4, 16–39, 42.  He was aware of the trial court's ruling allowing Ms. Moon to testify.  Nothing in the record indicates the plea offer had been rescinded before trial.  Petitioner knew two days prior to trial that Ms. Moon would be testifying about the 1996 incident, and any alleged prior advice to the contrary became irrelevant.  Trial counsel's performance was not deficient.

With respect to *Strickland* prejudice, Petitioner must show he would have accepted the plea offer but for counsel's deficient performance.  *Missouri v Frye*, 566 U.S. 134, 147 (2012); *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).  At sentencing Petitioner continued to maintain his innocence.  Exh. 1, Tr. at 360.  The pretrial plea offer and Petitioner's rejection of the offer were discussed at sentencing, but Petitioner asserted no grievances when given the opportunity:

> PROSECUTOR DURAN: [Petitioner] was extended an offer. We were going to reduce the charge. We weren't going to waive the minimum mandatory. We were going to reduce the charge and we offered him ten years in prison. He rejected that offer. That was relayed to him by defense counsel. And so given all of that, I would ask the court to sentence him to life in prison.

> DEFENSE COUNSEL DOHERTY: Judge, I believe that the offer was five years, five years' prison followed by ten years' probation. The minimum mandatory is five times what the state believed when they were making that offer was enough to protect the community from Mr. Moon.  I would ask the court to consider that in rendering sentence.

> THE COURT: Mr. Moon, it's the judgment, order and sentence of the court that you be adjudicated guilty of this offense and confined in the state prison for a term of 40 years with credit for whatever time you've already served.  Any questions about that?

Exh. 1, Tr. at 362–63.  Petitioner stood silent.  Petitioner has failed to show prejudice and therefore this claim has no merit.

The petition for the writ of habeas corpus (Dkt. 1) is denied.  The Clerk shall enter judgment against Petitioner and close the case.

### Certificate of Appealability and Leave to Appeal *in Forma Pauperis*

Petitioner is not entitled to a certificate of appealability ("COA") because he cannot make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  Having been denied a COA, Petitioner is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, on November 25, 2020.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Petitioner, *pro se*
Counsel of record

22